IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ARTHUR CLARK, JR., #232178, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:16-CV-319-ECM-SRW |
| | ) | (WO) |
| | ) | |
| MR. LIGON, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| ARTHUR CLARK, JR., #232178, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:16-CV-320-ECM-SRW |
| | ) | (WO) |
| | ) | |
| MR. MICHAEL L. HOLCEY, | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed on

May 5, 2016, by Arthur Clark, Jr., an indigent state inmate, challenging actions which

occurred at Bullock Correctional Facility.  (Doc. 1).  By order dated September 15, 2016

_____

[1]All documents and page numbers cited herein are those assigned by the Clerk of this
court in the docketing process.

the Court consolidated 2:16-cv-319-ECM-SRW with 2:16-cv-320-ECM-SRW and ordered that all further documents be filed in 2:16-cv-319-ECM-SRW, which it designated as lead case. (Doc. 16). In his complaint, the plaintiff alleges that the defendants violated his Eighth Amendment rights when they used excessive force against him on April 15, 2016. (Doc. 1 at p. 1). Thereafter, he filed an amended complaint alleging that sometime after April 15, 2016, the defendants retaliated against him when "they got an inmate to break my left arm at my wrist." (Doc. 21 at p. 2).

The plaintiff seeks monetary damages in this cause of action from the defendants, as well as treatment by a free world physician, and an injunction to prevent the defendants from "work[ing] around mentally unstable men and or women." (Doc. 1 at p. 3). The defendants filed a special report (Doc. 32, Exs. 1-7) and a supplemental special report (Doc. 35, Ex.1), which included relevant evidentiary materials in support of these reports – specifically, affidavits, prison documents and medical records – addressing the claims presented by Clark. In these documents, the defendants deny that they used excessive force against the plaintiff and deny they retaliated against the plaintiff.

After reviewing the special reports and exhibits, the court issued an order on January 19, 2017, requiring Clark to file a response to the defendants' special report, supported by affidavits or statements made under penalty of perjury and other evidentiary materials. These orders specifically cautioned that "**unless within ten (10) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the

time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special report, as supplemented, and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 36 at pp. 1-2).  Clark filed a response to this order.  (Doc. 38). Pursuant to the order entered on January 19, 2017, the court now treats the defendants' special report and supplements thereto as a motion for summary judgment and concludes that summary judgment is due to be granted in favor of the defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Rule 56(a), Fed.R.Civ. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary judgment "always bears the initial

---

[2]Although Rule 56 underwent stylistic changes in 2010, the revision of "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word — genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination."  *Id*.  "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Despite these changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [now dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Williamson Oil Company, Inc. v. Phillip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003) (holding that moving party bears the initial burden of establishing there is no genuine dispute as to any material fact); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (same). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by demonstrating that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24. The moving party discharges his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011)

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly

---

addressanother party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."). Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact. *Jeffery*, 64 F.3d at 593–94 (internal quotation marks omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).

To proceed beyond the summary judgment stage, an inmate-plaintiff may not rest upon his pleadings but must produce "sufficient [favorable] evidence" which would be admissible at trial supporting each essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249–50. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576–77 (11th Cir. 1990) (internal citation omitted). Conclusory allegations based on a plaintiff's subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (holding that grant of summary judgment is appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving

party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (holding that summary judgment is appropriate where no genuine dispute of material fact exists).  At the summary judgment stage, this court must "consider all evidence in the record . . . [including] pleadings, depositions, interrogatories, affidavits, etc. — and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists."  *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant.  *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248.  "Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."  *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*,

333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  "[T]here must exist a conflict in substantial evidence to pose a jury question."  *Hall v. Sunjoy Indus. Group, Inc.*, 764 F.Supp.2d 1297, 1301 (M.D. Fla. 2011) (citing *Anderson*, *supra*).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323–24.  A court may grant summary judgment where the pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact.  *Id*.  To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.  *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

8

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Clark's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough review of all the evidence contained in the record. It finds that Clark has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

### III. FACTS

In his complaint, the plaintiff alleges that on April 15, 2016, at about 12:10 p.m., he observed Defendant Officer Michael Holcey responding to a call for assistance with an inmate suspected of using marijuana. Holcey was proceeding to the H3 Dormitory and carrying a wooden baton. (Doc. 1 at p. 1). Plaintiff states that

> I told officer Holcey as he passed that he did not need that big stick. Officer Holcey talked bad about my momma. I snapped. I said "your [sic] the only retraded [sic] son of a bitch."

*Id.* The plaintiff alleges that, after this exchange,

> that son of a bitch [Officer Holcey] did stop and came at me. He first tried to hit me, I caught the stick. Then with his other hand he gradded [sic] me about my neck, and slammed me to the floor. I did not move. He walked around, dropped his knee onto my left upper chest and began to choke me.

(Doc. 1 at p. 1-2).

9

The plaintiff alleges that after this encounter he was taken to the shift office, where he saw Defendant Officer Ligon in the hallway.  He states that "St. Ligon told me to sit down" and, while looking for a chair, Officer Ligon "all of a sudden gradded [sic] about my chest and slammed me to the floor." (Doc. 1 at p. 2). Plaintiff claims that "both Officer Holcey and St. Ligon drug me across the floor and threw me into a room."  *Id.* He says that as a result of these actions he was injured.

The defendants deny using excessive force against the plaintiff. Defendant Michael Holcey states in his affidavit that on April 15, 2016, his assistance was requested in the Mental Health Treatment Unit H3 Dormitory at Bullock Correctional Facility. He removed a baton from the shift commander's office and responded by heading to H3 Dormitory. On his way, Holcey saw the plaintiff in front of H2 Dormitory. He testifies that, "Inmate Clark stated to Officer Holcey, 'You don't need that' and grabbed the baton.' Officer Holcey grabbed inmate Clark by the arm and placed him on the floor."  (Doc. 32-3 at p. 1).

Thereafter, Correctional Officer Eric Noble assisted Holcey in handcuffing the plaintiff.  (Doc. 32-1 at p.5; 32-5).  Defendants Ligon and Noble escorted the plaintiff to the health care unit for a medical assessment before he was released to his assigned dormitory.  (Doc. 32-1 at p. 2; Doc. 32-5).  During this time plaintiff continued to verbally attack the officers, saying, "[a]ll you fuckers assess **??** are retarded." (Doc. 32-1 at p. 5).  Ligon states that he was not present when the initial incident between Holcey and the plaintiff occurred, and that because the plaintiff "was handcuffed and compliant

by the time I arrived; there was no need to use force."  (Doc. 35-1 at p. 2).  The body chart performed on the plaintiff on April 15, 2016, reflected that plaintiff denied pain and reported, "I'm perfectly fine." The chart indicated that plaintiff suffered a small abrasion to his left knee, but there was no bleeding, swelling or laceration, and he had full range of motion to all extremities.  (Doc. 32-2).

In his amended complaint filed on September 26, 2016, Clark alleges that he suffered "retaliation" and "had to go to the hospital for surgery" because the defendants "got an inmate to break my left arm at my wrist, my left hand bones are broken too. . . . but the day he caused me to fall right after they made him a runner. . . .  And he told me 'he gets paid for what he does.'" (Doc. 21 at p. 1). An incident report states that on August 18, 2016 at about 8:15 a.m., the plaintiff was observed on the floor in H4 dormitory. When questioned, the plaintiff reported that "Inmate Keith Towles BM/198708 pushed me down." (Doc. 32-1 at p 32).  He was escorted to the Health Care Unit for treatment.  A body chart shows that the plaintiff suffered abrasions to his right and left knee and "swelling to the left wrist and hand, left wrist and hand disformed [sic]." (Doc. 32-1 at p. 34).

Shortly after the incident, Inmate Towles was questioned by prison staff about the occurrence, and he stated, "inmate Clark spit in my face. I put my hands up and pushed his hands back to keep him from hitting me in the face because he swung at me. Inmate Clark slipped and fell on the wet floor." (Doc. 32-1 at pp. 32-33). Defendants Ligon and Holcey both deny any involvement in or knowledge of this incident, which

forms the basis of the plaintiff's retaliation claim. They specifically deny asking or paying Inmate Towles to break the plaintiff's arm.  (Docs. 32-6; 35-1 at pp. 1-2).

Although many of the details underlying this action are disputed, there is no dispute that the plaintiff initiated the exchange with Defendant Officer Holcey by telling Officer Holcey that he "did not need that big stick" and by calling him "a retarded son of a bitch." (Doc. 1 at p. 1). Plaintiff also admits that Holcey did not strike him, but alleges that Holcey swung at him with his baton, which plaintiff "caught," and "grabbed me about my neck and slammed me to the floor." (Doc. 1 at pp. 1-2). Further, the plaintiff does not dispute that he continued his verbal attacks on the officers as he was taken to the Health Care Unit.  (Doc. 32-1 at p. 5). Also, in the body chart conducted on the plaintiff on April 15, 2016, he denied any pain and reported, "I'm perfectly fine." (Doc. 32-2).  Finally, with respect to the retaliation claim, the plaintiff does not deny that he spat in Inmate Towles face prior to their altercation or that his spitting caused the altercation.  (Doc. 32-1 at pp. 32-33).

## IV.  DISCUSSION

## A. ABSOLUTE IMMUNITY

To the extent that Clark requests monetary damages from the defendants in their official capacities, they are entitled to absolute immunity.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied.  Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted). Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14.  The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (consent is prohibited by the Alabama Constitution). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it."  *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)).  In light of the foregoing, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state

officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity). Thus, the Court will now address the plaintiff's claims brought against the defendants in their individual capacities

## B. DELIBERATE INDIFFERENCE

1. **Standard of Review.** "A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (internal quotation marks and citations omitted). Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health and safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it. *Id*. at 828. A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. "Within [a prison's] volatile community, prison administrators are to take all necessary steps to ensure the safety of . . . the prison staffs and

14

administrative personnel. . . .   They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves."   *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984) (internal quotation marks omitted).   The Eleventh Circuit has, however, consistently stressed that a "prison custodian is not the guarantor of a prisoner's safety." *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990); *Purcell ex rel. Estate of Morgan v. Toombs County*, *Ga.*, 400 F.3d 1313 (11th Cir. 2005) (same). "Only [a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment."   *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (internal quotation marks and citation omitted). "[D]eliberate indifference describes a state of mind more blameworthy than negligence" and, therefore, ordinary lack of due care for a prisoner's health or safety will not support an Eighth Amendment claim.   *Farmer*, 511 U.S. at 837.   "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

The law is well settled that establishment of both objective and subjective elements is necessary to demonstrate an Eighth Amendment violation.   *Caldwell*, 748 F.3d at 1099.   With respect to the objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official

15

must react to this risk in an objectively unreasonable manner." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual conditions; it outlaws cruel and unusual punishments. . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38 (internal quotation marks omitted); *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists – and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

16

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . .  Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).  Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation marks and citations omitted).  Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id.*  Even where a prison official perceives a serious risk of harm to an inmate, the official "may still prevail if he responded reasonably to the risk, even if the harm ultimately was not averted." *Comstock v. McCrary*, 273 F.3d 693, 706 (6th Cir. 2001) (internal quotation marks and citation omitted). In sum, prison officials cannot be held liable under the Eighth Amendment unless there is an objectively substantial risk of harm to an inmate, the defendants have knowledge of this substantial risk of harm, and, with this knowledge, they consciously disregard the risk. *Farmer*, 511 U.S. at 837.

### 2. **Excessive Force**

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual

punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (internal quotations and citations omitted). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" *Sims v. Artuz*, 230 F.3d 14, 22 (2nd Cir. 2000) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson*, 503 U.S. at 8. The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id.* (internal quotations omitted). To establish the subjective element, a plaintiff must demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Sims*, 230 F.3d at 21. With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Hudson*, 503 U.S. at 8. In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id.* at 4. "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim

merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

Summarizing the excessive force standard in the prison context, the Eleventh Circuit wrote:

> [u]nder the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7-8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich v. Thornton*, 280 F.3d 1295, 1300-1301 (11th Cir. 2002).

Recently, the Eleventh Circuit applied the *Whitley* factors in a §1983 action brought by a pro se prisoner for injuries he received during the inspection of his cell after he failed to follow an order from the defendant prison officers. *Miles v. Jackson,* 757 F. App'x. 828 (11th Cir. 2018). In *Miles,* the court identified five factors as relevant in determining whether force was applied "maliciously or sadistically": "(1) the need for

the application of force; (2) the relationship between that need and the amount of force used; (3) the threat 'reasonably perceived by the responsible officials,' . . . (4) 'any efforts made to temper the severity of the use of a forceful response,'" and  "(5) [t]he absence of serious injury." *Id.,* at 829 citing *Hudson,* 503 U.S at 7; quoting *Whitley,* 475 U.S. at 321.

The Eleventh Circuit has stated that, "[w]hen evaluating whether the force used was excessive, we give broad deference to prison officials acting to preserve discipline and security." *Pearson v. Taylor*, 665 F. App'x 858, 863 (11th Cir. 2016) (citing *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990); *Hudson*, 503 U.S. at 7 (holding that courts are to "give a wide range of deference to prison officials acting to preserve discipline and security.").  In addition, the determination "must not be made in the glow of hindsight." *Griffin v. Troy State Univ.,* 128 F. App'x 739, 742 (11th Cir. 2005) (citation omitted). "Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Bennett*, 898 F.2d at 1533.

In considering the application of the *Whitley* factors to the instant case, the court recognizes at the outset that there is no dispute the plaintiff initiated the exchange with Defendant Holcey, who was responding to a prison call, by telling Holcey that he "did not need that big stick" and by calling him "a retarded son of a bitch."  (Doc. 1 at p. 1). He also admits that Holcey did not strike him, but alleges that Holcey swung at him with his baton, which plaintiff "caught," and then "grabbed me about my neck and slammed

me to the floor." (Doc. 1 at pp. 1-2). Further, it is undisputed that the plaintiff continued his verbal attacks on the officers during the time he was taken to the Health Care Unit. (Doc. 32-1). The plaintiff further alleges that, while he was being escorted to the Health Care Unit, Officer Ligon grabbed his chest and slammed him to the floor. (Doc. 1 at p. 2). He also claims that during this time "both Officer Holcey and St. Ligon drug me across the floor and threw me into a room." *Id.* The officers deny the plaintiff's allegations. (Doc. 32-3; 35-1).

It is undisputed, however, that following a disciplinary hearing on April 26, 2016, the plaintiff was found guilty of violating Rule 519 – delaying, hindering, or interfering with an employee in performance of his/her duty. (Doc. 31-1 at pp. 16-17). Further, it is undisputed that within an hour after the April 15 incident, the plaintiff was seen by a nurse who completed a body chart. The body chart included a statement from the plaintiff that he was "perfectly fine" and noted only a "small abrasion to (L) knee." (Doc. 1 at p. 1; Doc. 32-2).

Although Holcey denies that he slammed plaintiff to the floor, and states that the plaintiff confronted him verbally and grabbed for the baton (Doc. 32-3 at p. 1) – and Defendant Officer Ligon denies using any force against the plaintiff because Clark was handcuffed when he arrived (Doc. 35-1 at p. 2) – the court must accept the truth of plaintiff's statements as evidence to be considered on a motion for summary judgment. *See Sears v. Roberts,* 922 F. 3d 1199, 1206 (11th Cir. 2019). However, assuming that the defendants used force on the plaintiff as he claims, an inmate's disorderly conduct

may justify the use of some force.  *Bennett,* 898 F.2d at 1531 (Where plaintiff was "cursing at the officers and creating a disturbance" the Court held the need for force was established.); *see also Bennett*, 898 F.2d at 1533 ("Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding.") .

The question then becomes whether the need to control the plaintiff's repeated tirades against the officers justified the amount of force used.  *Miles, id*.  The plaintiff alleges that Holcey swung at him with the baton, but admits that Holcy did not hit him and states that Holcey grabbed him by the neck and threw him to the floor, where he choked him.  (Doc. 1 at p. 1).  Plaintiff also states that Ligon grabbed him by the chest and slammed him on the ground, and that both Holcey and Ligon dragged him across the floor and threw him into a room.  (Doc. 1 at p. 2).  It is undisputed that, during this time, the plaintiff continued to attack the correctional officers verbally.  (Doc. 1 at p.1; 32-1-5).

In *Miles*, the Eleventh Circuit recognized that the "use of a takedown" inside the cell which included the prisoner's being tackled onto his bed and then onto the floor was not excessive when the prisoner "failed to obey a jailer's orders."  757 F. App'x at 829-30.  In *Bennett,* the Eleventh Circuit recognized the force used was not excessive when, in response to the prisoner's causing a "disturbance," the officers "grabbed . . . [the plaintiff] by the throat and pushed him against the bars."  898 F.2d at 1533.  The court

views the plaintiff's accounts of force in the instant action as akin to the circumstances of *Miles* and *Bennett*, where summary judgment was entered in favor of the defendants.

In addition, the plaintiff has failed to present any evidence that the force used against him was malicious or sadistic. Rather, the undisputed evidence shows that, following a disciplinary hearing on April 26, 2016, the plaintiff was found guilty of violating Rule 519 – delaying, hindering or interfering with an employee in performance of his/her duty. (Doc. 32-1 at pp. 16-17). *Bennett,* 898 F. 2d at 1533 (Court views inmate's receipt of a disciplinary for conduct underlying his excessive force claims as evidence of "officials acting to preserve discipline and security."). Force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley,* 475 U.S. at 320-21. Absent evidence to the contrary, the court concludes that the questions of the need for force and its proportionate use must be answered in favor of the defendants.

The third and fourth *Whitley* factors also weigh against the plaintiff. It is undisputed that the plaintiff initiated the confrontation with Officer Holcey, who was on a prison call, by swearing at him. (Doc. 1 at p.1). Further, the plaintiff's verbal attacks on the correctional officers continued while plaintiff was being taken to the Health Care Facility. (Doc. 32-1 at p. 5). Thus, the officers could reasonably perceive that the plaintiff presented a threat to security. Also, the officers' use of force was tempered, because within one hour of this occurrence, the plaintiff was seen by a nurse who

completed a body chart that reported no injuries. *See Miles,* 757 F. App'x at 830 (Force tempered where medical assistance was given promptly following incident.).

Finally, the court considers the extent of the injury suffered by the plaintiff. He alleges that, as a result of the April 15 incident, he has pain in his chest, back and left knee, and he asks this court to let a jury review his x-rays to determine the extent of his injury. (Doc. 1 at p. 2-3). However, the body chart taken contemporaneously with the incident belies these claims; plaintiff stated then that he was "perfectly fine" and medical personnel noted that he had only a "small abrasion to (L) knee." Further, no medical treatment was deemed necessary. (Doc. 1 at p. 1; Doc. 32-2). Accordingly, the court concludes that the medical evidence does not support the plaintiff's allegations of an extensive injury. *Miles,* 757 F. App'x at 830 (No "serious injury" where the only treatment was Tylenol). The court concludes that summary judgment is due to be granted on the plaintiff's excessive force claim.

## C.  RETALIATION

The plaintiff alleges that the defendants retaliated against him by getting "an inmate to break my left arm at my wrist, my left hand bones are broken too. . . . but the day he caused me to fall right after they made him a runner. . . .  And he told me 'he gets paid for what he does.'"  (Doc. 21 at p. 1).  An incident report explains that on August 18, 2016 at about 8:15 a.m., the plaintiff was observed on the floor in H4 dormitory. When questioned, the plaintiff reported that "Inmate Keith Towles BM/198708 pushed me down."  (Doc. 32-1 at p 32).  He was escorted to the Health Care Unit for treatment.

24

A body chart shows that the plaintiff suffered abrasions to the right and left knee and "swelling to the left wrist and hand, left wrist and hand disformed [sic]." (Doc. 32-1 at p. 34).

Shortly after the altercation, Inmate Towles was questioned by prison staff about the incident. He stated that "inmate Clark spit in my face. I put my hands up and pushed his hands back to keep him from hitting me in the face because he swung at me.  Inmate Clark slipped and fell on the wet floor." (Doc. 32-1 at pp. 32-33). Defendants Ligon and Holcey both deny any involvement in or knowledge of this incident, which forms the basis of the plaintiff's retaliation claim.   Specifically, they deny asking or paying Inmate Towles to break the plaintiff's arm.  (Docs. 32-6; 35-1 at pp. 1-2).

To proceed on a claim for retaliation and withstand the entry of summary judgment, the Eleventh Circuit has held that

> "an inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [defendants'] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. *See Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)."

*Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008). With respect to the causal relationship element, a prisoner must demonstrate that correctional officials intended to retaliate for his exercise of a right protected under the First Amendment and, but for the retaliatory motive, the adverse act complained of would not have occurred.  *Smith*, 532

F.3d at 1278-1279 citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274 (1977)

An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by showing "that his conduct was constitutionally protected and that this conduct ... was a 'motivating factor'" behind the adverse action of the defendant. *Mt. Healthy*, 429 U.S. at 287.  Merely alleging the ultimate fact of retaliation, however, is insufficient. *Cain v. Lane*, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988); *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).  Taking the plaintiff's allegations as true, as the court must on summary judgment, the court concludes the plaintiff fails to state a claim for retaliation based upon his allegations that the defendants "got an inmate to break my left arm at my wrist, my left hand bones are broken too. . . . but the day he caused me to fall right after they made him a runner. . . .  And he told me 'he gets paid for what he does.'" (Doc. 21 at p. 1).

Even in spite of these allegations, the undisputed evidence from Inmate Towles demonstrates that the altercation between him and the plaintiff occurred because "inmate Clark spit in my face. I put my hands up and pushed his hands back to keep him from hitting me in the face because he swung at me.  Inmate Clark slipped and fell on the wet floor." (Doc. 32-1 at pp. 32-33).  The plaintiff does not dispute Inmate Towles statement. Thus, plaintiff fails to plead a prima facie case of causation since the undisputed evidence shows that the altercation between Towles and Clark occurred because the plaintiff "spit in . . . [his] face," and also that plaintiff slipped on the wet floor. *Id.*

26

Accordingly, the court concludes that summary judgment is due to be granted in favor of the defendants on the retaliation claim.

## V.  CONCLUSION

Thus, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  No costs be taxed.

On or before **August 16, 2019**, the parties may file objections to this Recommendation.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made. Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, on this the 1st day of August, 2019.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge